**EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDINAL TRANSPORT, INC., A Delaware Corporation, AND C R TRANSPORT, INC., A Nevada Corporation,<br><br>Plaintiffs,<br><br>VS.<br><br>ASSURED PARTNERS OF OHIO, LLC, An Ohio Limited Liability Company, Successor in Interest to Wellington F. Roemer Insurance, Inc., A Nevada Corporation, D/B/A Roemer Insurance, AND ROBERT SCHWARTZ, Individually,<br><br>Defendants. | JUDGE SHARON JOHNSON COLEMAN<br><br>CASE NO. 2019 CV 4943 |

## SUPPLEMENTAL AFFIDAVIT

NOW COMES THE AFFIANT, WILLIAM WARFEL, and being first duly sworn on oath, states as follows:

1. That I am the retained expert for the Plaintiffs, CARDINAL TRANSPORT, INC. and C R Transport, Inc., hereinafter referred to as the "Plaintiffs".

2. That I have previously submitted my Affidavit herein relating to the allegations of commercial impossibility/frustration as an affirmative defense made by the Defendants, ASSURED PARTNERS OF OHIO, LLC and ROBERT SCHWARTZ, hereinafter referred to as the "Defendants".

3. That I am submitting this Supplemental Affidavit to the allegations of the Defendants that my opinions are without basis or foundation.

4. That my opinions are based upon my experience, teaching, education, and specialized knowledge concerning the insurance industry and insurance underwriting principles and practices.

5. That if called to testify, I would testify that so long as a carrier determined an adequate rate per truck on the road for a given policy period, and that said rate is adequate, meaning that it is sufficient to cover expected loss, expense, contingency, and profit, then insurers in the marketplace will underwrite a trucker's liability policy without including a 100% minimum annual earned premium provision. Such is the case because the insureds' number of trucks on the

road in a given policy period captures the loss potential (or expected loss) connected to the account.

6. That the number of trucks on the road in a given policy period has actuarial validity, the threshold criterion utilized to evaluate whether an underwriting practice is consistent with the maintenance of robust insurance markets.

7. That underwriting practices include the identification of factors, including the number of trucks on the road in a given policy period that (1) define risk classes containing insureds with similar loss-causing properties, and (2) distinguish those insureds within a risk class with above-average loss potential from those insureds within the risk class with average or below average loss potential.

8. That given the number of trucks on the road in a given policy period has strong actuarial validity, the only real justification for the inclusion of a 100% minimum annual earned premium provision in a trucker liability insurance policy would necessarily be related to the expenses incurred by the insurance carrier in underwriting the account.

9. That if an underwriting practice is not administratively efficient, the result is misclassification and/or substantial transaction costs. Misclassification occurs in the event a factor is not easily identifiable, highly visible, subject to easy verification, or objective in nature (i.e., measurable). Substantial transaction costs result in the event that the process of verification is administratively cumbersome.

10. That in this case, the number of trucks on the road in a given policy period is highly administratively efficient, meaning very minimal, if any, misclassification, and very minimal transaction costs incurred in obtaining this data. While gross revenue can be manipulated and easily underreported, the same cannot be said for the number of trucks on the road in a given policy period. The fact that the number of trucks on the road in a given policy period is easy to verify, objective, and highly visible is undisputable, meaning that lots of carriers within the marketplace would be willing to underwrite trucker's liability insurance for an account such as the Plaintiffs without a 100% minimum annual earned premium provision.

11. That if an underwriting practice does not have "incentive value", then loss control, and the expense related thereto, becomes an important consideration that could, in some cases, justify the inclusion of a 100% minimum annual earned premium provision. Certainly, the number of trucks on the road in a given policy period is heavily influenced by factors that have little, if anything, to do with encouraging safe driving on the road. The availability of truckers is perhaps the most significant determining factor that has a very substantial bearing on the

number of trucks on the road in a given policy period, as evidenced by the loss of truckers for the Plaintiffs due to retirement, etc., and that the Plaintiffs experienced when a driver was involved in a tragic accident in Georgia, thus resulting in a greatly reduced number of trucks on the road, giving rise to this litigation.

12. That in this case, however, there is no expense connected to loss control for the liability insurer that underwrites trucker's liability insurance for the Plaintiffs. A review of the file in this case indicates that the Plaintiffs incurred most, if not all, of the loss control expense (i.e., employing a safety professional, checking the driving records of its drivers, terminating drivers with poor safety records, subjecting drivers to random drug/alcohol tests, inspection results connected to trucks on the road, including violations and warnings, evaluating maintenance records connected to equipment on trucks on the road, etc.).

13. That, in other words, there was no justification connected to loss control for a liability insurer underwriting trucker's liability insurance for the Plaintiffs to include a 100% minimum annual earned premium provision in the policy. Of course, in a robust, competitive insurance market, it follows that lots of liability insurers would not have insisted on the inclusion of a 100% minimum annual earned premium provision as a condition precedent for underwriting the Plaintiffs' account.

14. That, in confirming the application of the above underwriting principles, I am able to identify three (3) insurance carriers who have issued trucking liability policies without including a 100% mandatory minimum earned premium provision. These companies are: ACE Property and Casualty Insurance Company, Sentry Select Insurance Company, and Great West Casualty Company.

FURTHER, THE AFFIANT, WILLIAM WARFEL, SAITH NAUGHT.

*William Warfel*
WILLIAM WARFEL, Affiant

SUBSCRIBED AND SWORN to before me the 15th day of December, 2021

*Lori Ann Ellingsworth*
NOTARY PUBLIC

CHRIS D. ROUSKEY
ROUSKEY AND BALDACCI

(SEAL) LORI ANN ELLINGSWORTH
Resident of Vigo County, IN
Commission Expires: May 11, 2024

210 N. HAMMES AVENUE, SUITE 105
JOLIET, ILLINOIS 60435
PHONE: 815-741-2118
E-MAIL: ROUSKEYLAW@GMAIL.COM
IL REGISTRATION NO. 03123595