**<u>EXHIBIT B</u>**

William J. Warfel
Indiana State University
Insurance and Risk Management Program
Terre Haute, IN 47809
(812) 237-2122 (Office)
(765) 653-0662 (Home)

WORK HISTORY:

Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1999-Present)

Associate Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1994-August 1999)

Assistant Professor of Insurance and Risk Management
Indiana State University, Terre Haute, Indiana
(August 1990-August 1994)

Assistant Professor of Finance and General Business
University of Southern Mississippi, Hattiesburg, Mississippi
(August 1988-August 1990)

TEACHING ACTIVITIES:

Taught Property/Liability Insurance, Health Insurance, Life Insurance, Introduction to Risk and Insurance, Commercial Liability Insurance, and Insurance Seminar.

SERVICE ACTIVITIES:

Expert Witness:

Prepared a Declaration in a case concerning whether a third party who was provided a loaner vehicle by a friend who was employed by an automobile dealership (1) qualified as a "customer" under the terms of a Garage Operations-Auto Only Liability Insurance Policy, and an Umbrella Liability Insurance Policy, in which case he would not fit within the definition of an "insured" under both respective policies, and (2) whether an automobile exclusion precluded coverage under the Umbrella Liability Insurance Policy (Jennifer Sloniker, and the Estate of Jason Michael Sloniker, by its Personal Representative, Jennifer Sloniker, Plaintiffs V. Motorists Mutual Insurance Company, Defendant), October 2021.

Prepared a Declaration in a case concerning whether the insurer acted in good faith in its processing of several property insurance claims connected to a fire that occurred on June 4, 2015, and a theft that occurred on June 5, 2015; these respective claims were presented by insured persons' under a Boatowners Policy, a Personal Automobile Policy, and a Homeowners Policy (Bolin V. Allstate Property and Casualty Insurance Company), July 2021.

Prepared a Declaration in a case concerning a CGL Policy and an Umbrella Liability Policy, in which the owner of a shopping center (a named insured), and the property management firm (a named insured) were both sued based on an omission pertaining to the proper execution of a Right of Entry Form for the Indiana Department of Transportation (INDOT) so that INDOT could gain access to the premises of the shopping center, and implement precautions concerning a dangerous egress connecting the shopping center to a highway; because the egress issue was not addressed on a timely basis, an automobile accident occurred, resulting in a serious, bodily injury to a passenger in one of the two vehicles involved in a collision; the Declaration responded to a Complaint for Declaratory Judgment filed by Property-

Owners Insurance Company against the two named insureds', referenced above, as well as the injured passenger of the vehicle, referenced above, contending that the two respective liability insurance policies', referenced above, do not provide defense and indemnification coverage with respect to the underlying, liability case, referenced above (Magdalen France, by and through her natural parents and guardians, Plaintiff V. Regency Northern Indiana, LLC, Cross Property Management, LLC, RMS Wabash, LLC, Defendants V. Property-Owners Insurance Company, Defendant), June 2021.

Prepared a Declaration in a case concerning Business Liability Coverage contained in a Businessowners Policy, in which an auctioneer (the named insured) was sued for wrongful death, alleging that the named insured failed to supervise properly a recycling, independent contractor, who, by mistake, placed a tank containing chlorine gas in a truck for the purpose of being hauled to a local recycling facility; the sealed tank exploded at the recycling facility, causing injury and death to innocent bystanders; the Declaration evaluated whether Country Mutual Insurance Company was correct it its assertion that the pollution exclusion, contained in an ISO standard, CGL Policy, precluded indemnification and defense coverage for the named insured, Country Mutual Insurance Company, an Illinois Corporation (Plaintiff) V. Steven O. Anderson, as personal representative of the Estate of Edward K. Dumaw, on behalf of the Estate and surviving family members, Carrie Dumaw, Kristen Dumaw, Megan Dumaw, and Anna Dumaw, individually, et al. (Defendants), June 2021.

Prepared a Declaration in a homeowners insurance case stemming from the Woolsey Wildfire that resulted in the destruction of a number of homes in affluent neighborhoods located in Malibu, California (a designated brush area prone to wildfires in which State Farm issued Companion Policies-a Difference in Conditions (DIC) Policy-with a mandatory attached "California Fair Plan Policy Perils Exclusion," under which the fire peril is not a covered peril, assuming that the property was eligible to be insured through the procurement of a property insurance policy from the California Fair Plan); eligibility hinges on whether a property insurance policy in compliance with California Insurance Code Section 2070 is available in the admitted market; the Declaration addressed issues concerning whether (1) the State Farm Companion Policy was in compliance with Section 2070, (2) State Farm was permitted to exclude the fire peril, given California Insurance Code Section 2080, which generally permits an insurer to limit its liability under the terms of the property insurance policy, (3) the "California Fair Plan Policy Perils Exclusion," assuming that it is legally valid in this case, given the availability of fire coverage in the admitted market, in fact applied to the property insurance claim presented to State Farm in this case; this issue, in turn, hinged on whether the named insured was put on sufficient notice by State Farm concerning the existence of this exclusion in terms of information that was presented on Renewal Certificates and Declarations Pages annually sent to the named insured, and (4) State Farm acted in bad faith with respect to its processing of the property insurance claim presented by the named insured in the immediate aftermath of the Woolsey Wildfire that occurred in November 2018 (Zilinskas V. State Farm General Insurance Company, et al.), May 2021. Deposed in this case, July 2021.

Prepared a memorandum evaluating a breach of contract/bad faith claim where the carrier filed a Motion to Dismiss with respect to a business income claim that was submitted under the Business Income (And Extra Expense) Coverage Form that was attached to a Commercial Property Insurance Policy; this business income claim stemmed from two shutdown orders issued by public health officials in the immediate aftermath of the emergence of the coronavirus in March 2020 (Selery Fulfillment, Inc. V. Colony Insurance Company, et al.), March 2021.

Prepared a memorandum evaluating a breach of contract/bad faith claim where the carrier suspended coverage with respect to a claim for monthly home health care benefits under a long-term care policy that included an unlimited, lifetime benefit period, but then (1) retroactively paid the suspended monthly home health care benefits, (2) resumed payment of the monthly home health care benefits subject to a Reservation of Rights letter, and (3) filed a Declaratory Judgment Action against the insured, contending that the insured did not meet the Activities of Daily Living requirement under the terms of the long-term care policy (Bankers Life and Casualty V. Nancy Arlene Klapes and Home Nursing Services, Inc.), March 2021. Deposed in this case, April 2021.

Prepared a memorandum evaluating breach of contract/bad faith claims that stemmed from a property insurance claim presented by RAP INDY, LLC and MSI Lynhurst Indianapolis Grocery, LLC under Commercial Property Insurance policies underwritten by Travelers Indemnity Company and Zurich American Insurance, respectively, in successive policy periods in which multiple thefts of electrical wiring and copper waterlines, etc. connected to plumbing fixtures occurred in a vacant grocery store building over a six month period before these thefts were discovered by a real estate broker who had entered the vacant building for the purpose of showing the property to a prospective owner, or lessee; in addition to the thefts referenced above, there was substantial vandalism damage caused by the thieves, and water damage that resulted from the thieves entering the vacant building through a roof hatch that was left open, allowing extremes of temperature, moisture, and rain to enter the vacant building, thereby causing additional property damage, as well as mold to develop (RAP INDY, LLC and MSI Lynhurst Indianapolis Grocery, LLC V. Zurich American Insurance and The Travelers Indemnity Company), February, 2021. Deposed in this case, April 2021.

Prepared a memorandum evaluating (1) whether a retail broker bears professional responsibility for the $381,747 compensatory damages plus attorney fees and other litigation cost, on account of failure to include a reference, in the binder issued by Roemer Insurance shortly before the November 1, 2017 renewal date, to the 100 percent mandatory minimum annual earned premium provision that was in fact included in not only the Truckers Auto Liability policy sent to Roemer Insurance, as well as Cardinal Transport and CR Transport, two months or so subsequent to the November 1, 2017 renewal date, but also was included in the binder issued by Strategic Insurance Underwriters, the general managing agent who represented American Hallmark Insurance Company, shortly before the November 1, 2017 renewal date, and (2) assuming that the omission referenced above was intentional on the part of Robert Schwartz, the President of Roemer Insurance who had responsibility for the handling of the Cardinal Transport and CR Transport account, a major account, whether punitive damages, as well as consequential damages, including attorney fees and other litigation cost, are warranted based on Mr. Schwartz's intentional misconduct that in fact occurred in this case (Cardinal Transport, Inc., a Delaware Corporation, and CR Transport, Inc., A Nevada Corporation V. Assured Partners of Ohio, LLC, An Ohio Limited Liability Company, Successor in Interest to Wellington F. Roemer Insurance, Inc., A Nevada Corporation, D/B/A Roemer Insurance, and Robert Schwartz, Individually), November, 2020. Deposed in this case, January 2021. Prepared an Affidavit in this case, November, 2021.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Dwelling and Loss of Rents coverage for a duplex that was rented out to several tenants by the named insured when it attempted to settle a claim for water damage that included dry out cost, property damage, and loss of rents for an inordinately small amount in relation to the documented loss submitted by the named insured, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with the handling of the claim referenced above (Elina Wingate V. The Foremost Insurance Company), November, 2020.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Contractors Equipment Coverage on a 2008 Daewoo High Chassis Excavator, Solar 300LL, S#1004 when a theft claim was denied, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with its handling of this theft claim (Bryan Newton and Newton Environmental, DBA Waste Away Carting, LLC V. Joseph T. Cutruzzula, Jr., The Andover Companies, and Merrimack Mutual Fire Insurance Company, et al.), March 2020. Deposed in this case, July 2020.

Prepared a memorandum (1) evaluating whether an insurer breached an insurance policy that provided Blanket Farm Unscheduled Personal Property Coverage when a theft claim was denied, and (2) assuming that a breach was committed, whether the insurer acted in bad faith in connection with its handling of this theft claim (James E. Getty and Angela M. Getty V. Farm Bureau Property and Casualty Company and Farm Bureau Financial Services), January 2019.

Prepared a memorandum evaluating whether an insurer acted in bad faith with respect to its processing of a business contents claim (Leonardo Garcia, et al V. Allstate Insurance Company), August 2017. Deposed in this case, September 2017.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under a Contractor's Equipment -- Equipment Leased Or Rented From Others Coverage Endorsement (Howell Tractor and Equipment Company V. Alliance Tank Service, LLP), October 2016. Deposed in this case, May 2017.

Prepared a memorandum evaluating whether an insurer breached a Commercial Automobile Insurance Policy when a proper rejection of Underinsured Motorists Liability Coverage was not executed pursuant to its coverage template and the Indiana Uninsured and Underinsured Motorists Liability Coverage Statute (Jacqueline Cochran, Individually and as Administrator of the Estate of Dennis Cochran V. Hartford Fire Insurance Company), July 2016.

Prepared a memorandum evaluating an underinsured motorist coverage issue (Miranda Scroufe V. Zurich Insurance Company, et al.), March 2013.

Prepared a memorandum evaluating whether State Farm (1) breached its contractual obligation when it voided the applicable homeowners insurance policy based on its contention that the insured submitted altered sales receipts connected to several oriental rugs that were damaged in a fire, and (2) acted in good faith in its handling of the homeowners insurance claim when it learned that these altered sales receipts had been submitted to State Farm by the insured (Elliott V. State Farm Fire and Casualty Insurance Company), November 2011. Deposed in this case, May 2012.

Prepared a memorandum evaluating whether an insurer breached a Commercial Property Insurance policy and acted in bad faith when it denied coverage for cosmetic damage to a metal roof caused by hail (C & J Real Estate, Inc. V. Auto-Owners Insurance Company), May 2012.

Prepared a memorandum evaluating various liability insurance coverage issues with respect to a claim that was presented under both a Business Auto Coverage Form and a Commercial General Liability Coverage Form (Immokalee Produce Shippers, Inc. V. ACE Fire Underwriters Insurance Company; Immokalee Produce Shippers, Inc. V. Indemnity Insurance Company of North America), April 2012.

Prepared a memorandum evaluating whether an insurer acted in bad faith with respect to its processing of a disability claim (Nancy Erhart V. United of Omaha Life Insurance Company), April 2012.

Prepared a memorandum evaluating (1) whether Motorist Mutual acted in good faith in completing its investigation concerning whether Jennifer Harris was identified as the applicant-named insured in the application for insurance as opposed to Jack Custer, (2) who bears responsibility for the inaccurate identification of the applicant-named insured in the application for insurance, and (3) whether Jennifer Harris had an insurable interest in the home that was consumed by a fire (Jack Custer and Jennifer Harris V. Motorist Mutual Insurance Company, Risinger Insurance, et al.), March 2012.

Prepared a memorandum evaluating whether an insurer, in its response to a fire insurance claim that was presented by a policyholder under a homeowners insurance policy, (1) breached the contract, and (2) acted in bad faith (Harold Switzer V. Sentry Insurance, A Mutual Company), February 2012.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Von Gregory and Patricia Gregory V. Bybee Insurance, Inc.), December 2011. Deposed in this case, January 2012.

Prepared a memorandum evaluating a Premium Classification issue under a Commercial General Liability policy (Granada Insurance Company V. Imperial Lawn and Garden Care; Ramon Garcia; and Filiberta Rebolledo, Personal Representative of the Estate of Amado Angeles Gomez), December 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal property claim that was presented under a homeowners policy (Wendt V. Auto-Owners Insurance Company, et al.), December 2011. Deposed in this case, December 2011.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Indiana Restorative Dentistry, P.C. V. The Laven Insurance Agency and ProAssurance Indemnity Company, Inc.), October 2011. Deposed in this case, December 2011.

Prepared a memorandum evaluating whether an insurer breached its contractual obligation in denying a death claim that was presented under an individual life insurance policy (Berthaline C. Siburt, Individually and as Special Administrator of the Estate of James A. Siburt V. AIG American General Life Insurance Company, et al.), May 2011. Deposed in this case, November 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under an Open Installation Floater (Neshaminy Constructors, Inc. V. Federal Insurance Company), November 2011.

Prepared a memorandum evaluating whether Coe College (1) had a responsibility to design and implement a sound risk management program calculated to assure a safe environment for students who participated in the 2008 version of Flunk Day, (2) failed to implement properly the risk management program that it had designed, and (3) created a dangerous environment for students when it approved for the 2008 version of Flunk Day the installation of the inflatable obstacle course (Campbell V. Coe College), November 2011.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (SAMS Hotel Group, LLC V. Assurance Company of America and 1st Source Insurance, Inc.), November 2010. Deposed in this case, September 2011. Prepared a supplemental memorandum, October 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a builder's risk insurance claim ( SO 38th Street LLC V. Harleysville, et al.), August 2011. Prepared a supplement to this memorandum, October 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to a claim that was presented under an Employee Dishonesty Coverage Form (The College Network, Inc. V. Cincinnati Insurance Company), May 2011. Prepared an addendum to this memorandum, August 2011. Deposed in this case, August 2011. Prepared a bad faith supplement to this memorandum, October 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a commercial property insurance claim ( T.L. Montgomery, Inc. d/b/a Protein, Inc. et al. V. CNA Insurance Company ), July 2011. Deposed in this case, August 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal automobile liability insurance claim ( Wolfe V. Allstate Property and Casualty Insurance Company ), June 2011. Deposed in this case, August 2011.

Prepared a memorandum evaluating whether an insurance carrier breached its contractual, fiduciary, and legal (tort and statutory) obligations that it owed to an annuitant (Jenny J. Snedeker V. Stephen C. Snedeker, and Jackson National Life Distributors, LLC, d/b/a Jackson National Life Insurance Company), May 2011. Deposed in this case, June 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a commercial property insurance claim (Valle Vista Limited, LLC V. Selective Insurance Company of South Carolina), May 2011.

Prepared a memorandum evaluating whether an insurance carrier acted in bad faith in terms of how it handled a personal property claim that was presented under a homeowners policy (Mary Faye Miller V. Auto-Owners Insurance Company), April 2011.

Prepared a memorandum evaluating various insurance coverage issues with respect to an Employer's Liability claim that was presented under a Commercial General Liability insurance policy (Granada Insurance Company V. Jose Molina, Vielka Molina, Grocery Stop, Inc., d/b/a Los Cunados Grocery), December 2010.

Prepared a memorandum evaluating (1) the extent to which MI Windows & Doors, Inc. suffered a legal detriment as a result of not being given the benefit of additional insured status, pursuant to the terms of the Transportation Agreement, when Southeastern Freight Lines, Inc. apparently failed to take those steps required under the Transportation Agreement in terms of putting the insurer on notice concerning MI Windows & Doors, Inc.'s claim, and (2) whether this apparent omission on the part of Southeastern Freight Lines, Inc. constitutes bad faith (MI Windows & Doors, Inc. V. Southeastern Freight Lines, Inc.), August 2010. Deposed in this case, November 2010.

Deposed in the case, Alloyd Insulation Company, et al. V. Cincinnati Insurance Company, et al., July 2010. In this Bid Guaranty and Contract Bond case, the principal requested an evaluation concerning whether the obligor (surety company) (1) conducted an adequate investigation before reaching a settlement with respect to a claim that was presented by the obligee under the performance bond, and (2) if the investigation was deemed inadequate, whether the settlement amount would have been substantially reduced had an adequate investigation been conducted by the surety company.

Prepared a memorandum evaluating whether an (1) insurance agent breached his professional responsibility to a client, and (2) insurer breached its contractual obligation to the policyholder to provide coverage under an Inland Marine policy (Sterett Construction Company V. AmSouth Steel Erectors, et al.), February 2010.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Mary Jacques, as Administratrix of the Estate of Larry G. Hose, deceased V. Raymond Eugene Hoak and Images Club, Inc., V. Smallwood and Small Insurance, Inc. and G. Morgan Insurance Agency, Inc.), January 2010.

Deposed in the case, Patrick M. Brooks, Special Administrator of the Estate of Fred Hamilton V. State Farm Insurance Companies, et al., November 2009. In this wrongful death case, the Estate of Fred Hamilton requested an evaluation concerning whether State Farm had conducted an adequate investigation concerning whether Edward Leak had a sufficient insurable interest in the life of Fred Hamilton so as to justify the issuance of a $500,000 life insurance policy under which Edward Leak was the owner/beneficiary and Fred Hamilton was the insured.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Donna Thiele v. John Rodgers, et al.), June 2009. Deposed in this case, November 2009.

Deposed in the case, Voland-Hammond Property, LLC d/b/a Creekside Condo Association V. Bright & Williamson Insurance Agency and Financial Services, Inc., October 2009. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care. This case was tried before a jury in state court in Nashville, Indiana on November 18, 19, 2009. The jury returned a verdict in favor of the policyholder, assessing 80 percent fault to the insurance agent and 20 percent fault to the policyholder.

Prepared a memorandum evaluating whether (1) a retail insurance agent and a surplus lines insurance agent breached his/her professional responsibility to a client, and (2) full replacement cost coverage is provided under the applicable commercial property insurance coverage (North Bay Real Estate, Inc. v. First Mercury Insurance Company, et al.), April 2009. Deposed in this case, September 2009.

Deposed in the case, Heartland Warehouse and Distribution Services V. Rebsamen Insurance, May 2009. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care. This case was tried before a jury in state court in

Springfield, Missouri on May 18-May 20, 2009. The jury returned a verdict in favor of the policyholder, assessing 72.5 percent fault to the insurance agent and 27.5 percent fault to the policyholder.

Prepared a memorandum evaluating whether an insurance agent breached her professional responsibility to a client (Timberlane Village Gardens Condominium Association v. Insurance Designers, Inc.), November 2008. Deposed in this case, April 2009.

Prepared a memorandum evaluating whether an insurance carrier breached (1) its contractual obligation to the policyholder to provide coverage under a Builder's Risk policy, and (2) the implied covenant of the utmost good faith in its handling of the claim (Vista Ridge Development, LLC. V. Assurance Company of America), December 2008. Deposed in this case, February 2009.

Deposed in the case, James R. Gonzales, Jr. V. Ohio Casualty Insurance Company, June 2008. In this breach of contract/bad faith case, Mr. Gonzales, a claimant who the policyholder assigned its cause of action against Ohio Casualty, requested an evaluation of (1) various insurance coverage issues under a Commercial General Liability insurance policy that had been issued to the policyholder, and (2) the conduct of Ohio Casualty in terms of its response to the claim that had been presented by the policyholder.

Deposed in the case, Wayne and Diane Stahl V. Auto-Owners Insurance Company, et al., May 2008. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care.

Prepared a memorandum evaluating various coverage issues with respect to a claim that was presented under a public official bond (City of Providence V. Ohio Casualty Insurance Company), June 2007. Deposed in this case, December 2007.

Prepared a memorandum evaluating whether a (1) Managing General Underwriter (MGU) breached its professional responsibility to a commercial policyholder, and (2) retail insurance agent breached its professional responsibility to a commercial policyholder (Sports Arena Management, Inc. DBA: American Heartland Ice Arena V. K&K Insurance; K&K Insurance V. American Security Insurance), November 2007. Deposed in this case, December 2007.

Deposed in the case, Rothschild Management Group, LLC V. Affiliated Insurance Agencies, Inc., et al., August 2007. In this insurance broker liability case, the policyholder requested an evaluation concerning whether the insurance broker breached the standard of care.

Prepared a memorandum evaluating whether (1) an insurance agent breached his professional responsibility to a client, and (2) coverage is provided under Section II of the applicable Homeowner's Policy (Tom and Diane Arnold, etc., et al. V. State Farm Insurance, et al.), August 2007.

Prepared a memorandum evaluating an insurer's response to a claim presented under a Business-Owner's Insurance Coverage Form (Zlatica Malbasa V. American Family Mutual Insurance Company), July 2007.

Prepared a memorandum evaluating various coverage issues with respect to a death claim that was presented under an individual life insurance policy (Katherine L. Yost V. Stonebridge Life Insurance Company), May 2007.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client ( Dan Van Gordon and Van Gordon Construction V. Larry Jackson, et al.), December 2006.

Prepared a memorandum evaluating whether an insurance broker breached his professional responsibility to a client (Superior Aluminum Alloys, LLC, et al. V. United States Fire Insurance Company, et al.), September 2006. Deposed in this case, November 2006.

Prepared a memorandum evaluating various liability insurance coverage issues with respect to a claim that was presented under an (1) underlying Garage Operations-Auto Liability Coverage Form, and (2) Umbrella Garage Operations- Excess Liability Coverage Form (Chehi V. Empire Fire and Marine Insurance Company), April 2006.

Prepared a memorandum evaluating (1) various property insurance coverage issues with respect to a claim that was presented under a homeowners policy, and (2) the conduct of the insurance carrier in terms of its response to this claim (Ault V. Shelter Insurance Company), February 2006.

Deposed in the case, Devinki V. L. J. Gliem and Associates, et al., February 2006. In this insurance agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached the standard of care.

Prepared a memorandum evaluating (1) various insurance coverage issues with respect to a claim that was presented by a bank under a first party Financial Institution Bond, and (2) the conduct of the insurance carrier in terms of its response to this claim (Matrix Bancorp, Inc. V. National Union Fire Insurance Company), January 2006.

Deposed in the case, Donna Combs V. Lumbermens Mutual Casualty Company, January 2006. In this bad faith case, the insurance carrier requested an evaluation concerning whether it breached the implied covenant of utmost good faith in the resolution of a disability income claim. On appeal, the Indiana Appellate Court implied that the trial court committed an error in excluding my expert testimony based on a lack of direct experience in handling individual disability income insurance claims, but ruled that the insurance carrier failed to make an offer of proof and, therefore, waived its right to allege an error. (No. 49A05 – 0608 -- CV --- 436, September 20, 2007). Petition to transfer this case to the Indiana Supreme Court denied, 2008.

Prepared a memorandum evaluating (1) various insurance coverage issues with respect to an Advertising Injury Liability claim that was presented under a Commercial General Liability insurance policy, and (2) the conduct of the insurance carrier in terms of its response to this claim (Pizza Magia V. Assurance Company of America), January 2006.

Prepared a memorandum evaluating various insurance coverage issues with respect to a death claim that was presented under an individual life insurance policy (Edith Vinci V. Conseco Life Insurance Company), July 2005.

Prepared a memorandum evaluating whether a Builder's Risk and Installation Form, along with the endorsements attached thereto, constitutes inland marine insurance as opposed to property insurance (Liberty Insurance Underwriters, Inc. V. The Weitz Company, LLC), June 2005.

Deposed in the case, Silver Dollar City V. Marsh USA, May 2005. In this insurance broker liability case, the policyholder requested an evaluation concerning whether Marsh USA breached the standard of care.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Hanson Cold Storage Company v. Gibson Insurance Agency), May 2005.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Nancy McGinn, as Administrator of the Estate of Jerome L. McGinn, Deceased V. Schuneman Insurance Agency, Inc.), December 2003. Deposed in this case, February 2005.

Deposed in the case, Underwriters at Lloyd's, London V. Zurich American Insurance Company, December 2004. In this breach of contract case, Lloyd's filed an equitable contribution action against Zurich contending that coverage exists with respect to a food contamination (or infestation) claim under an all-risk commercial property insurance policy that Zurich had issued to Bar-S Foods. In this case, Zurich requested an evaluation of various coverage issues.

Prepared a memorandum evaluating whether an insurance carrier had (1) an obligation to provide indemnity coverage under a commercial general liability policy with respect to a premises liability claim, and (2) engaged in vexatious and unreasonable conduct in terms of how it handled the claim (Travelers Insurance Company V. ConocoPhillips), July 2004. Deposed in this case, September 2004.

Prepared a memorandum evaluating whether an insurance carrier engaged in vexatious and unreasonable conduct in terms of how it handled a homeowners insurance claim (Lummis and Macbeth v. State Farm Fire and Casualty Insurance Company), August 2004.

Prepared a memorandum evaluating whether an insurance carrier breached the implied covenant of utmost good faith in the resolution of a commercial automobile liability insurance claim (State Auto Insurance Company V. Hellyer Construction Company, et al.), May 2004.

Deposed in the case, James and Vicky Engel and Broken Arrow, Inc. V. Capitol Indemnity Corporation, January 2004. In this bad faith case, the policyholder requested an evaluation concerning whether the insurance carrier breached the implied covenant of utmost good faith in the resolution of a property and business income claim.

Prepared a memorandum evaluating various insurance coverage issues with respect to an underinsured motorists bodily injury claim (Nancy McGinn, as Administrator of the Estate of Jerome L. McGinn, Deceased V. Erie Insurance Exchange, d/b/a Erie Insurance Group), December 2003.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (C & L Trucking, Inc. V. Miles & Finch), November 2003.

Prepared a memorandum evaluating various insurance coverage issues with respect to a worker compensation insurance claim (Alexander Equipment Rental V. Regency Insurance Company), October 2003.

Prepared a memorandum evaluating whether an insurance carrier breached the implied covenant of utmost good faith in the resolution of an uninsured motorist coverage claim (Fields V. Woodley and Allstate Insurance Company), August 2003.

Prepared a memorandum evaluating various insurance coverage issues with respect to a theft claim for loss of a motorcycle (Bowling V. Dairyland Insurance Company), July 2003.

Prepared a memorandum evaluating whether an insurance carrier had the duty to defend under a Commercial General Liability insurance policy and an Umbrella Liability insurance policy (Pizza Magia V. Ohio Casualty), April 2003.

Prepared a memorandum evaluating the obligation of an insurance carrier to provide defense and indemnity coverage with respect to a professional liability claim (Professional Health Care Corporation V. Acceptance Indemnity Insurance Company), January 2003.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client ( Little Point Auto Truck Stop, Inc. V. Acordia of Indiana, Inc.), September 2002. This case was tried before a jury in state court in Martinsville, Indiana on November 19, 20, 2002. The jury returned a verdict in favor of the policyholder, assessing sixty percent fault to the insurance agent and forty percent fault to the policyholder.

Prepared a memorandum evaluating whether an insurance carrier's policies and procedures regarding the payment of general contractor's overhead and profit under a homeowners insurance policy constitutes breach and bad faith (Burgess V. Farmers), April 2002.

Prepared a memorandum evaluating whether an insurance carrier's policies and procedures regarding the payment of general contractor's overhead and profit under a homeowners insurance policy constitutes breach and bad faith (Brooks V. State Farm), March 2002.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Professional Health Care Corporation V. J.L. Johnson Insurance Agency), December 2001.

Prepared a memorandum evaluating whether an insurance agent breached his professional responsibility to a client (Crim V. Palmer Insurance Agency), September 2000.

Prepared a memorandum evaluating various insurance coverage issues in an employee dishonesty case (Pay Less Supermarkets V. GRE Insurance Group and Travelers Insurance Group), February 2000.

Prepared a memorandum evaluating various insurance coverage issues in a patent infringement case (Green Machine Corporation V. The Zurich-American Insurance Company), February 2000.

Deposed in the case, Prescott School District V. United States Fidelity and Guaranty Insurance Company, May 1998. In this insurance-to-value case, the insurance carrier requested an evaluation of various insurance coverage issues.

Deposed in the case, J. N. Moser Trucking V. Starck and Associates Insurance Agency, October 1997. In this agent liability case, the policyholder requested an evaluation concerning whether the insurance agent breached his professional responsibility.

Insurance Industry Studies:

Commissioned by the National Association of Mutual Insurance Companies (NAMIC), along with Sharon Tennyson, to prepare an Issues Analysis paper concerning legislative expansion of policyholder remedies for first party bad faith. The title of this Issues Analysis paper was, "First Party Insurance Bad Faith Liability: Law, Theory, and Economic Consequences." (September 2008). Participated in a panel discussion that addressed issues pertaining to the above topic at the 2008 NAMIC Convention (September 30, 2008, Philadelphia, Pennsylvania).

Commissioned by Networks Financial Institute at Indiana State University to draft a working paper concerning issues related to insurance regulatory reform. The title of this working paper was, "Insurance Regulation: An Evaluation of Reform Options." (2006)

Commissioned by the Coalition for Quality, Affordable Housing to conduct a study concerning why reliance on litigation to resolve disputes relating to alleged construction defects has contributed to a price/availability problem with respect to contractors liability insurance in California. The result of this study was an article entitled, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act." (1999)

Completed a faculty internship with Safeco Insurance Companies, the purpose of which was to examine the response of state legislatures to disruption in property insurance markets that occurs in the aftermath of a natural disaster, and examine the need for federal reinsurance. The result of this faculty internship was an article entitled, "Natural Disasters and Disruption in Property Insurance Markets: The Case for Federal Reinsurance." (1998)

Commissioned by State Farm Insurance Companies to conduct a study evaluating whether underwriting practices that have a disparate impact on inner-city residents serve a legitimate business purpose. The result of this study was an article entitled, "Market Failure in Urban Property Insurance Markets: An Assessment of Potential Solutions." (1994)

Commissioned by State Farm Fire and Casualty Insurance Company to conduct a study concerning the impact of natural disasters on insurers and the insurance marketplace. The result of this study was an

article entitled, "Market Failure in Property Insurance Markets: The Case for a Joint Region-Federal Disaster Insurance Program." (1993)

Professional Service:

Member, Board of Directors, Overseeing the Development and Use of a Monetary Investment Software Tracking System (MI$T) for the purpose of holding contractors and subcontractors connected to construction projects accountable, and protecting the insurable interest of banks who finance these construction projects. (2021-Present).

Made a presentation titled "Application of the Separation of Insureds Condition" to the members of the Indianapolis Bar Association in its Winter Symposium, Insurance Coverage Section, December 9, 2021.

Participated as a panelist in a plenary session sponsored by the United Campus Ministries, and the Indiana State University Center for Economic Education. The title of this session was, "Healthcare Reform: Industry Implications, Insurance Complications, and the Economics of it All." (December 7, 2017, Terre Haute, Indiana).

Assistant Editor, CPCU eJournal, September 2004-2012.

Participated as a panelist in a session held at the 2012 American Association of Insurance Management Consultants Annual Meeting. The title of this session was, "Expert Witness-Plaintiff V. Defendant." (May 5, 2012, St. Petersburg, Florida).

Made a presentation at the 2008 meeting of the Coalition Against Insurance Fraud. The title of this presentation was, "First Party Insurance Bad Faith Liability: Implications for Insurance Fraud."

Participated as a panelist in a plenary session held at the 2008 American Risk and Insurance Association Annual Meeting. The title of this plenary session was, "Expert Testimony in Insurance: A Tutorial." (August 6, 2008, Portland, Oregon).

Member, Indiana Department of Insurance Agent Licensing Initiative. (2005 – 2006).

Participated in a symposium sponsored by the Senior Resource Section of the Society of CPCU. The theme of this symposium was "Dealing with Problems Associated with Retirement." Among other issues, this symposium addressed issues pertaining to nursing home litigation (May 5, 2003, Tampa, Florida).

Served on a panel that addressed various issues pertaining to nursing home litigation. This seminar was sponsored by the Indiana Health Care Association (September 2001).

Made a presentation at the February 2001 meeting of the Terre Haute Association of Insurance and Financial Advisors. The title of this presentation was, "Nursing Home Litigation-Implications for Development of the Private Long-Term Care Insurance Market."

Served on a panel that addressed various issues pertaining to construction defect litigation. This seminar was sponsored by the Central Arizona Chapter of the Society of CPCU (February 2000).

Made a presentation at a CPCU Seminar sponsored by the Grand Lake Chapter (Ohio) of the Society of CPCU (April 1999). The title of this presentation was, "Market Failure in Urban Property Insurance Markets."

Participated in a mock trial jointly sponsored by the Independent Insurance Agents of Indiana and the Central Indiana Chapter of the Society of CPCU (March 1998). This mock trial was entitled "Shifting Agent Responsibilities."

Past President, Western Risk and Insurance Association. (1998)

University Service:

Member, Grade Appeal Committee. (2021-Present)

Member, Teaching, Learning, and Research Committee. (2019-Present)

Member, Health Insurance Program Review Committee. (2008)

Member, Gongaware Study Group. (2005-2006)

Member, Insurance and Risk Management Program Scholarship Committee. (1990-Present)

Member, Search and Screening Committee for Executive Director of Gongaware Center for Insurance Management Development. (1998)

Developed a Summer Honors Course in Insurance and Risk Management for outstanding high school students, the purpose of which was to create visibility in high schools for the Insurance and Risk Management Program. Conducted a fundraising campaign for the purpose of soliciting contributions to the I.S.U. Summer Honors Course in Insurance and Risk Management Scholarship Fund. This course included classroom instruction, guest speakers, and field trips. (1996-1998)

Chairperson of Search and Screening Committee for Chairperson of Department of Insurance and Risk Management. (1995)

RESEARCH ACTIVITIES:

Applied Research (Professional Journals):

Warfel, "Public Official Bonds: Determining the Intent of the Parties to the Contract," The John Liner Review, Fall 2011, pp. 68-76.

Warfel and Adamson, "Insurance Certificate Disclaimers: A Tutorial," The John Liner Review, Summer 2010, pp. 52-60.

Warfel, "Agent/Broker Liability-An Identification of Potential Errors and Omissions Liability Issues," CPCU eJournal, May 2010, pp. 1-19.

Warfel, "Agent/Broker Liability: A Tutorial for Commercial Policyholders," The John Liner Review, Winter 2010, pp. 26-37.

Tennyson and Warfel, "The Law and Economics of First Party Insurance Bad Faith Liability," Connecticut Insurance Law Journal, Fall 2009, pp. 203 – 242.

Warfel, "Trade Dress Infringement Litigation: An Identification of Potential Coverage Issues," The John Liner Review, Fall 2008, pp. 41-51.

Warfel, "Follow Form Excess Liability Insurance: Should the Primary Policy be Considered in Construing the Excess Policy?," CPCU eJournal, October 2008, pp. 1-8.

Tennyson and Warfel, "The Emergence and Potential Consequences of First-Party Insurance Bad-Faith Liability," Journal of Insurance Regulation, Winter 2008, pp. 3-20.

Warfel and Asperger, "Builders Risk and Installation Form: Inland Marine Insurance or Property Insurance?, " The John Liner Review, Winter 2008, pp. 51-65.

Warfel, "Brownfield Transactions: Identification of Environmental Liability Exposures," <u>CPCU eJournal</u>, September 2007, pp. 1-6.

Warfel, "Insurance Regulation: An Evaluation of Reform Options," <u>CPCU eJournal</u>, July 2007, pp.1-11.

Warfel, "The Liquor Liability Exposure: Risk Management Implications for the Employer," <u>CPCU eJournal</u>, December 2006, pp. 1-9.

Warfel, "The Additional Insured Endorsement and the Incentive to Create a Safe Workplace," <u>CPCU eJournal</u>, February 2006, pp. 1 – 6.

Warfel, "Environmental Insurance Coverage Disputes: Is State Legislation the Solution?," <u>CPCU eJournal</u>, September 2005, pp. 1-12.

Warfel, "Asbestos Litigation Reform: An Identification of Problematic Issues," <u>CPCU eJournal</u>, November 2004, pp. 1-15.

Warfel and Query, "Sexual Harassment Litigation: Risk Management Implications," <u>CPCU eJournal</u>, August 2004, pp. 1-13.

Warfel, "Terrorism and Disruption in Insurance Markets: The Need for a Permanent Solution," <u>CPCU eJournal</u>, June 2003, pp. 1-13.

Warfel and Mikolaj, "Hospital Litigation: Risk Management Implications," <u>CPCU eJournal</u>, April 2003, pp. 1- 18.

Warfel, "Regulation of Risk Retention Groups: A Case for Reform," <u>CPCU eJournal</u>, August 2002, pp. 1-25.

Warfel, "Premises Security Litigation: Risk Management Implications," <u>CPCU eJournal</u>, June 2002, pp. 1-14.

Warfel, "Nursing Home Litigation: A Case for Reform," <u>CPCU Journal</u>, Winter 2001, pp. 233-248.

Warfel, "Natural Disasters and Disruption in Property Insurance Markets: The Case for Federal Reinsurance," <u>CPCU Journal</u>, Spring 2000, pp. 30-48.

Warfel, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act," <u>CPCU Journal</u>, Fall 1999, pp. 157-171.

Warfel, "Coverage Disputes in Construction Defect Cases," <u>CPCU Journal</u>, Winter 1998, pp. 238-247.

Warfel, Mikolaj, and Hamwi, "Genetic Information and Risk Classification in Individual Life and Health Insurance," <u>Journal of the American Society of CLU and ChFC</u>, September 1998, pp. 44-52.

Warfel and Hamwi, "Coverage Disputes in Toxic Tort Liability Cases," <u>CPCU Journal</u>, Spring 1998, pp. 40-48.

Warfel, "Market Failure in Urban Property Insurance Markets: An Assessment of Potential Solutions," <u>CPCU Journal</u>, Summer 1996, pp. 83, 103-115.

Warfel and Hamwi, "Actuarial Practices V. Social Considerations: The Inner-City Property Insurance Problem," <u>Research Review (Journal of the Society of Insurance Research)</u>, Spring 1996, pp. 13-22.

Warfel, "Market Failure in Property Insurance Markets: The Case for a Joint Region-Federal Disaster Insurance Program," <u>Journal of Insurance Regulation</u>, Summer 1994, pp. 486-514.

Warfel, "Were the 1986 CGL Policy Changes Necessary?," <u>CPCU Journal</u>, September 1993, pp. 167-176.

Warfel, "Interpretation of the CGL Policy in Cleanup Cost Cases - Should Insurers Be Required to Pay?," <u>Journal of Insurance Regulation</u>, Summer 1993, pp. 491-508.

Warfel, "Expansion of the Long-Tail Product Liability Exposure -Insurance Price/Availability Implications," <u>Journal of Insurance Regulation</u>, Spring 1993, pp. 379-403.

Warfel, "Insurance Regulatory Policy - An Analysis of Price/Availability Implications Within the Framework of Insurability," <u>Journal of Business and Economic Perspectives</u>, Spring 1992, pp. 7-12.

Warfel, "The Proposed Federal Earthquake Insurance Program: Is it Viable?," <u>CPCU Journal</u>, March 1992, pp. 49-56.

Warfel, "An Analysis of the Effect of Tort Reform on the Awarding of Punitive Damages in Product Liability Actions," <u>Journal of Insurance Regulation</u>, Winter 1991, pp. 225-238.

Warfel, "Interpretation of the CGL Policy in Long-Tail Product Hazard Cases - Price/Availability Implications," <u>Journal of Products Liability</u>, Volume 13, Number 4, 1991, pp. 301-327.

Warfel, "Tolling of Statutes of Limitation in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Journal of Products Liability</u>, Volume 13, Number 3, 1991, pp. 205-230.

Warfel, "State-of-the-Art Evidence in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Journal of Products Liability</u>, Volume 13, Number 3, 1991, pp. 183-204.

Warfel, "Adoption of the Market Share Approach in Long-Tail Product Liability Litigation - The Transformation of the Tort System into a Compensation System," <u>Ohio Northern University Law Review</u>, Volume 17, Number 4, 1991, pp. 785-804.

Warfel, "The Misguided Use of the Doctrine of Punitive Damages in Long-Tail Product Liability Litigation," <u>Journal of Insurance Regulation</u>, March 1991, pp. 455-470.

Warfel, "The Misguided Use of Reasonable Expectations in Long-Tail Products Liability," <u>CPCU Journal</u>, March 1991, pp. 46-55.

Applied Research (Trade Publications):

Warfel, "Defeating an Additional Insured Endorsement," <u>Risk Management Reports</u>, Summer 2011, pp.1-4.

Warfel and Adamson, "Avoiding the Pitfalls of Certificates of Insurance," <u>Risk Management Magazine</u>, June 2010, pp. 1-3.

Tennyson and Warfel, "First-Party Insurance Bad-Faith Liability," <u>Pravartak: Journal of Insurance and Risk Management</u>, May 2009, pp. 78-84.

Tennyson and Warfel, "Bad-faith lawsuits: Raise standard of proof," <u>Fraud Focus</u>, Winter 2009, p. 8.

Warfel, "Bridging the Gap: Follow Form vs. Stand Alone Excess Liability Insurance," <u>Risk Management Magazine</u>, January/February 2009, pp.50-53.

Warfel, "Follow Form v. Stand Alone Excess Liability Insurance: A Tutorial," Ohio Trial, Fall 2008, pp. 19-24.

Warfel and Asperger, "A Landmark for Builder's Risk Insurance Policies," Claims Quarterly, October 2008, pp. 4-6.

Warfel and Asperger, "A Landmark for Builder's Risk Insurance Policies," Risk Management Magazine, February 2008, pp. 32-36.

Warfel, "One for the Road:  The Implications of Liquor Liability," Risk Management Magazine, October 2006, pp. 38-41.

Warfel, "Additional Insureds and the Moral Hazard," Risk Management Magazine, January 2006, pp. 26 – 29.

Warfel and Query, "Sex Ed: Insulating Yourself from Sexual Harassment Litigation," Risk Management Magazine, February 2005, pp. 14-20.

Warfel, "The Rocky Road to Asbestos Litigation Reform," Risk Management Magazine, November 2004, pp. 20-26.

Warfel, "Amending TRIA," Risk Management Magazine, June 2003, p. 47.

Warfel, "Regulating Risk Retention Groups, Part II: Closing the Loopholes," Risk Management Magazine, February 2003, pp. 32-35.

Warfel, "Regulating Risk Retention Groups: A Case for Reform (Part I)," Risk Management Magazine, January 2003, pp. 44-47.

Warfel, "Diagnosing the Nursing Home Liability Insurance Crisis- A Case for Reforming the System," Senior Resource Section Quarterly, January 2003, pp. 2-5.

Warfel, "Risk Management Implications of Premises Security," Risk Management Magazine, November 2002, pp.23-26.

Warfel, "Proposed Legislation Could Decrease Defect Litigation," Builder and Developer, February 2000, p. 58.

Warfel, "Construction Defect Litigation: A Case for Enactment of the California Homebuyer Protection and Quality Construction Act," Mealey's Litigation Report: Construction Defects, November 1999, pp. 43-46.

Warfel, "Were the 1986 CGL Policy Changes Necessary?," Lloyd's Environmental Risk International, December 1993, pp. 3-8.

Pedagogical Research:

Warfel, "Serving as a Testifying Expert Witness in a Breach of Contract/Bad Faith Case on Behalf of a Plaintiff-A Retrospective Analysis of an Illustrative Case," Journal of Risk Education, (Currently Under Review).

Warfel, " Agent/Broker Errors and Omissions In An Illustrative Commercial Property Insurance Case : A Risk Management Perspective," Journal of Risk Education, Volume 10, Number 1, 2019, pp. 24-34.

Warfel, " The Anatomy of an Employee Dishonesty Coverage Claim: A Risk Management Perspective," Journal of Risk Education , Volume 8, Number 1, 2017, pp. 53-66.

Warfel, "Expert Witness Consulting and Its Relationship to Research, Service, and Teaching," CPCU eJournal, April 2008, pp.1-3.

Warfel and Boose, "Creating Linkages with the Insurance and Risk Management Community," The Journal of Risk Education, Volume I, Number I, 2004, pp. 20-35.

Published a number of short articles pertaining to various property-casualty insurance topics in Encyclopedia Americana (2002, 2003).

Warfel and Mikolaj, "Forging Partnerships Between Academia and the Insurance and Risk Management Community: Opportunities and Pitfalls," CPCU eJournal, September 2002, pp. 1-4.

Warfel, "Creating Visibility for Insurance and Risk Management Programs in High Schools," Risk Management and Insurance Review, Summer 1998, pp. 99-105.


EDUCATION

GRADUATE:

> Indiana University, Bloomington, Indiana
> Ph.D. May, 1990
> Major: Insurance and Risk Management
> Minor: Finance
> Work-in-Depth (Research Tool): Economic Analysis
> GPA: 3.7/4.0

> University of Oklahoma, Norman, Oklahoma
> MBA August, 1983
> Major: Accounting/Finance
> GPA: 3.8/4.0

UNDERGRADUATE:

> St. John's University, New York, New York
> BBA December, 1980
> Major: Insurance
> GPA: 3.8/4.0

AWARDS:

> Indiana State University, Theodore Dreiser Distinguished Research/Creativity Award (2008)

> Indiana State University, College of Business Exemplary Scholarship Award (2008)

> Indiana State University, College of Business Professional Productivity (Scholarship) Award (1995)

> State Farm Foundation Doctoral Dissertation Award - $10,000 (1987)

> CPCU/Harry J. Loman   Foundation Doctoral Dissertation Award - $5,000 (1987)

PROFESSIONAL DESIGNATIONS:

> Chartered Life Underwriter (CLU) (1994)

Chartered Property Casualty Underwriter (CPCU) (1987)

PERSONAL:

    Marital Status: Married (Debra)
    Date of Birth:  December 2, 1957

REFERENCES:

    Steve Pahl, CPCU, ARM
    Senior Consultant
    Risk Resources
    185 S. York Street
    Elmhurst, Illinois 60126
    (630) 617-5655

    Dr. Tim Query
    Mountain States
    Insurance Group Chair
    New Mexico State University
    Department of Finance
    MSC 3FIN
    Las Cruces, New Mexico  88003
    (575) 646-5253

    Dr. Sharon Tennyson
    Department of Policy Analysis and Management
    252 MVR Hall
    Cornell University
    Ithaca, New York  14853
    (607) 255-2619

    Brett E. Nelson, Partner
    Plews, Shadley, Racher, & Braun LLP
    1346 North Delaware Street
    Indianapolis, Indiana 46202-2415
    Re: RAP INDY, LLC & MSI Lynhurst Indianapolis Grocery, LLC V. Zurich-American Insurance &
    The Travelers Indemnity Company
     (317) 637-0700

    Ron Getchey
    (619) 699-2445
    Re: Allstate V. Scroghan, Allstate and Woodley V. Fields

    Joseph D. O'Connor
    (812) 332-9295
    Re: Voland-Hammond Property, LLC d/b/a Creekside Condo Association V. Bright & Williamson
    Insurance Agency and Financial Services, Inc.

    Emily C. Guenin-Hodson
    Mark C. Guenin
    Guenin Law Office, P.C.
    574 South Miami Street
    Wabash, Indiana 46992
    (260) 569-7900
    Re: Magdalen France, by and through her natural parents and guardians, Plaintiff V. Regency

Northern Indiana, LLC, and RMS Wabash, LLC, Defendants V. Property-Owners Insurance Company, Defendant

Richard A. Ifft
(202) 719-7170
Re: Underwriters at Lloyd's, London V. Zurich American Insurance Company