UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| CARDINAL TRANSPORT, INC., A Delaware Corporation, AND C R TRANSPORT, INC., A Nevada Corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 19-cv-4943 |
| ASSURED PARTNERS OF OHIO, LLC, An Ohio Limited Liability Company, Successor in Interest to Wellington F. Roemer Insurance, Inc., A Nevada Corporation, D/B/A ROEMER INSURANCE AND ROBERT SCHWARTZ, Individually, | ) ) ) ) ) ) ) ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |

## COMBINED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE OPINION AFFIDAVIT OF WILLIAM WARFEL AND MEMORANDUM IN SUPPORT OF MOTION TO STRIKE SUPPLEMENTAL OPINION AFFIDAVIT OF WILLIAM WARFEL

NOW COME Defendants, WFR Holdings of Toledo, Inc., incorrectly sued as "Assured Partners of Ohio, LLC, An Ohio Limited Liability Company, Successor in Interest to Wellington F. Roemer Insurance, Inc., A Nevada Corporation, d/b/a Roemer Insurance" and Robert Schwartz (collectively, "Defendants"), by their undersigned attorneys, and respectfully submit this combined Reply Memorandum of Law in support of their Motion to Strike Opinion Affidavit of William Warfel ("Motion") and Memorandum of Law in Support of their Motion to Strike the Supplemental Opinion Affidavit of Professor Warfel, the latter motion having been filed contemporaneously herewith.

In a desperate attempt to try to salvage the proffered opinion testimony of their retained expert, William Warfel, Plaintiffs have now submitted still another eleventh-hour affidavit from

1

Mr. Warfel. In this latest offering (ECF Dkt #120-1), Mr. Warfel goes into even greater detail than in his deposition testimony or his original affidavit in opposition to Defendants' Motion for Summary Judgment as to how the insurance marketplace should run according to his theoretical principles. Only in his last paragraph does Warfel even try to address the only relevant question – was an insurance policy available to these Plaintiffs at the specific time of their renewal of coverage with Hallmark that did NOT contain ANY mandatory minimum premium provision. That question is not, despite Mr. Warfel's academic and theoretical posturings, determined by the consideration of any underwriting theory of loss, expense or "misclassification." Rather the question of whether such coverage was actually available to Plaintiffs can only be answered by factual evidence as to the existence or non-existence of such a policy. As Defendants have repeatedly noted, the only evidence produced in this case as to that question reveals that: (1) Hallmark would NOT issue such a policy to Plaintiffs because of their risk profile, loss history and questionable reporting practices; (2) Defendants searched the market for such a policy and could not find one for Plaintiffs; (3) other insurance producers retained by Plaintiffs did not offer such a policy to Plaintiffs; and (4) no such policy would have been available to Plaintiffs from the Illinois Assigned Risk Pool.

None of Warfel's theories of what "would have" or "should have" been available to Plaintiffs through his discussion of abstract underwriting principles, matter one whit and none is relevant to the question of whether his theories are adequate substitutes for actual evidence that such a policy did exist at the time in question and was available to these particular Plaintiffs. Mr. Warfel's theories are not helpful to a lay jury, which can well understand evidence of an existing policy available to Plaintiffs if such evidence were presented or introduced. The absence of such evidence and the unavailability of such policies needs no classroom lecture on the elements of

sound underwriting in order to be understood and Mr. Warfel's original and Supplemental Affidavits provide nothing more.  Neither affidavit meets the requirements of *Daubert* and this court should protect the jury in this case from his unhelpful and irrelevant conjecturing by striking both.

Paragraph 14 of Mr. Warfel's Supplemental Affidavit represents his only attempt to offer something real-world and practical in the way of an opinion.  He states that he was able to identify three companies who, at some unknown time and with respect to some unidentified policyholders, purportedly issued "trucking liability policies without including a 100% mandatory minimum earned premium provision." (ECF Dkt #120-1, par. 14).  This blanket and unsupported conclusion, even taken at face value, does nothing, however, to answer the question at issue.  Note that Mr. Warfel cleverly phrases his conclusion to make it sound like an answer to the question of whether a policy without ANY mandatory minimum premium requirement was available to these Plaintiffs at the time of their Hallmark policy renewal.  But that is not what he says.  Rather, he specifies his awareness of policies without 100% mandatory minimums.  But this is not what Plaintiffs claim they required.  They did not state that they would have accepted a 95% mandatory minimum or even a 90% mandatory minimum.  To the contrary, Plaintiffs' entire case relies, despite the deposition testimony to the contrary,[1] on their claim that only a policy without ANY mandatory minimum was acceptable.  Thus, the only relevant question

---

[1] *See* Amended Local Rule 56.1 Statement of Defendants (ECF Dkt # ), par. 20 :

> Jack Riley, the owner and CEO of Cardinal Transport and J.R. Riley's father, testified that J.R. "told [Schwartz and den Boggende] that [Plaintiffs] didn't want any kind of a guarantee" and that, if one was included, "it's got to be reasonable [sic] guarantee." (Exh. 5, p. 53:13-22; 56:1-6).

(Exh. 5 at p. 56:1-6).

being addressed by Defendants' commercial frustration affirmative defense is whether a policy without ANY mandatory minimum premium requirement was available to Plaintiffs at the time at issue. All evidence proves that it was not and Warfel's opinion regarding the existence of non-100% mandatory minimums does nothing to shed any contrary light or provide any different answer.

This statement of Warfel's suffers from the same fatal flaws as each of his other stated opinions. First, as noted, the issue is whether a policy without ANY mandatory minimum was available to the Plaintiffs. Because Plaintiffs allege that they instructed Defendants to procure an insurance policy only if it contained NO mandatory minimum premium requirement and that Defendants are liable for not procuring such a policy, the fact that three companies might allegedly have offered a 95% or a 90% (or any number other than 100%) mandatory minimum is immaterial, inconsequential and of no assistance to the trier of fact. Warfel's statement offers nothing probative to the question at hand.

Moreover, Warfel's identification of the three companies does not lay any kind of foundation that would enable this court in its gatekeeping role to determine if the policies alluded to were in any way comparable to what Plaintiffs claim they requested in this case. For example, when did each of the companies allegedly issue the trucking liability policies? To whom were they issued? Did the policyholders to whom they were issued fit the same or a comparable risk profile as the Plaintiffs in this case? In particular, were the policyholders to whom these policies were purportedly issued of the same size as the Plaintiffs, with a comparable number of vehicles to be insured? Did they present a loss experience like the negative history experienced by the Plaintiffs in the years preceding the renewal? Had the policyholders to whom these policies were allegedly issued, like the Plaintiffs in this case, been suspected of inconsistent and

questionable financial reporting to their insurers before this coverage was obtained? Absent these foundational facts, the purported existence of trucking liability policies containing some degree of a mandatory minimum premium requirement is of absolutely no moment and of no relevance to the issues in this case. It tells us nothing.

Years ago, a hamburger used a highly skeptical senior citizen as its spokesperson to cast doubt on the quality of its competitors' burgers. Continuously asking "where's the beef," she effectively captured the essence of the other chains' allegedly empty promises and bloviating assertions. The same question is appropriate here. If, as Plaintiffs contend, the type of insurance policy they wanted (trucking liability with NO mandatory minimum premium requirement) was available to them at the time of their renewal, "where's the beef?" or, in this case, "where's the policy?" There is no evidence of any such policy anywhere in the record of this case and certainly cannot be found in any of the various testimony of Professor Warfel, a man who has never placed a policy of insurance in his life.

If coverage of the type supposedly required by Plaintiffs was available, where is evidence of the actual policy? If such a policy existed in the marketplace, it is a demonstrable fact and evidence, not theories, would be available. Given the absence of any such evidence and Defendants' introduction of evidence to the contrary (no such policy from Hallmark, none found by Defendants, none found by Plaintiffs' other insurance producers and none available from the Illinois Assigned Risk Pool), Mr. Warfel's affidavits are irrelevant and unhelpful. Those affidavits should be stricken and summary judgment on the question of commercial frustration/unavailability should be granted.

The question before the court on the commercial frustration issue is simply whether the policy allegedly required by Plaintiffs was actually available to them in the marketplace. Instead

5

of addressing that question and presenting evidence that such a policy existed at the relevant time, Plaintiffs instead, through the mouthpiece of Mr. Warfel's affidavits, argue that the court should ignore what it is actually seeing and what the evidence actually shows and listen instead to the classroom theories of how policies *should* be underwritten by some mythical textbook insurance company.  Mr. Warfel's affidavits offer nothing of relevance and nothing germane and should be stricken.

                                            Respectfully submitted,

                                            s/ Mitchell A. Orpett
                                            One of the attorneys for Defendants

Mitchell A. Orpett, Esq. – ARDC# 3121966
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, Illinois 60606
(312) 201-6400
maorpett@tribler.com
docket@tribler.com

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of Combined Reply Memorandum of Law in Support of Defendants' Motion to Strike Opinion Affidavit of William Warfel and Memorandum in Support of Motion to Strike Supplemental Opinion Affidavit of William Warfel was served upon:

Chris D. Rouskey
Rouskey and Baldacci
210 N. Hammes Avenue, Suite 105
Joliet, Illinois 60435
(815) 741-2118
rouskeylaw@gmail.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 29th day of December, 2021, with proper postage prepaid.

                                              s/ Mitchell A. Orpett
                                                  an Attorney