UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDINAL TRANSPORT, INC. AND ) <br> C R TRANSPORT, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ASSURED PARTNERS OF OHIO, LLC, ) <br> D/B/A ROEMER INSURANCE AND ) <br> ROBERT SCHWARTZ, Individually, ) <br> ) <br> Defendants. ) | Case No. 19-cv-4943 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Cardinal Transport, Inc. ("Cardinal") and C R Transport, Inc. ("C R Transport"), operate a trucking business that requires insurance coverage for their fleets of vehicles. They bring this action against their prior insurance producers, Assured Partners of Ohio, LLC, d/b/a Roemer Insurance ("Roemer") and Robert Schwartz ("Schwartz"). As to Roemer, plaintiffs allege negligence (Counts III and IV[1]), and intentional misrepresentation (Counts V and VI). Against Schwartz, plaintiffs allege intentional misrepresentation (Counts VII and VIII). Defendants moved for summary judgment on all counts. Defendants subsequently amended the motion. For the reasons stated below, the Court strikes defendants' first motion for summary judgment as moot [91]. The Court denies defendants' amended motion for summary judgment [97] on Counts III–VI and grants the motion on Counts VII and VIII.

**Background**

The following facts are undisputed unless otherwise noted. In 2016, defendants procured an insurance policy (hereinafter the "First Hallmark Policy") by American Hallmark Insurance

---
[1] Counts I and II are resolved in a separate order (Dkt. 125.)

Company of Texas ("Hallmark") through its agent, Strategic Program Managers, Inc. ("Strategic"), which provided trucking, liability, and equipment insurance. This policy, as well as all the previous policies procured for plaintiffs by defendants since 2013, contained a mandatory minimum premium agreement, meaning that the insured must pay a guaranteed minimum premium amount as dictated by a post-policy-period audit.

In September 2017, representatives for plaintiffs and defendants met regarding the renewal of the First Hallmark Policy. The parties dispute the content discussed at the meeting and the parties' representatives testified to varying recollections of the conversation. Plaintiffs contend they advised defendants that they would not accept any policy containing a mandatory minimum premium provision. (Dkt. 99, ¶ 15–16.) Nonetheless, defendants procured a policy through Hallmark with a 100% mandatory minimum premium.

On October 13, 2017, Hallmark issued an insurance binder through Strategic (the "Strategic Binder"), which contained the proposed terms of the renewal policy (the "Renewal Policy"), including the 100% minimum premium provision. Roemer then created its own binder (the "Roemer Binder") describing the terms of the Policy, which it forwarded to plaintiffs. (*Id.*, ¶ 3.) The parties disagree whether Schwartz created or had a hand in creating the Roemer Binder. Defendants admit the Roemer Binder does not include the language "mandatory minimum premium," but contend that the Roemer Binder nonetheless communicated the mandatory minimum premium by stating that the premium could be adjusted after an audit following the policy period. (Dkt. 99, Ex. 7, at 236–37.) The policy also contained a disclaimer that stated:

> THE INFORMATION CONTAINED IN THIS DOCUMENT IS PROVIDED IN SUMMARY FORM FOR YOUR CONVENIENCE. ONLY THE INSURANCE CONTRACT IS ITSELF LEGALLY BINDING. PLEASE REFER TO THE POLICY FOR SPECIFIC INFORMATION SUCH AS POLICY LIMITS, EXTENT OF COVERAGE AND DEDUCTIBLE LEVELS. (*Id.* at 235.)

Plaintiffs did not receive a copy of the Renewal Policy referenced within the Roemer Binder until January 16, 2018. (Dkt. 106, ¶ 5.) Upon receipt of the Renewal Policy, however, plaintiffs did not read the policy. (Dkt. 99, ¶ 32.) When plaintiffs made payments on the policy, they also received a monthly reporting form. For the First Hallmark Policy, the monthly reporting form designated a monthly minimum premium amount. (Dkt. 106, ¶ 7.) The Renewal Policy monthly reporting form did not indicate that the premium was a mandatory monthly minimum premium amount. (*Id.*)

Plaintiffs contend, and defendants dispute, that plaintiffs first became aware of the mandatory minimum premium on September 18, 2018. (*Id.*, ¶ 13.) Defendants maintain that Schwartz told Riley about the mandatory minimum premium two or three weeks prior to the November 1, 2017 policy renewal. (Dkt. 99, Ex. 2, at 63:16–64:5.) Plaintiffs assert that, had they been aware of the mandatory minimum premium, they would not have accepted the policy.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson,* 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

The Court presumes familiarity with its recent ruling granting Roemer's motion for summary judgment on Counts I and II. Roemer additionally moves for summary judgment on plaintiffs' claims of negligence (Counts III and IV) and intentional misrepresentation (Counts V and VI). Schwartz moves for summary judgment on plaintiffs' intentional misrepresentation against him (Counts VII and VIII).

Negligence Claims (Counts III and IV)

Plaintiffs allege that Roemer negligently procured the Renewal policy, which resulted in a policy with a mandatory minimum premium provision. Specifically, plaintiffs contend that Roemer failed to: (1) represent to Hallmark their unwillingness to agree to a mandatory minimum premium provision; (2) notify plaintiffs of the mandatory minimum premium requirement; (3) fully advise plaintiffs of the terms of its negotiations with Hallmark; and (4) provide plaintiffs with an insurance binder accurately reflecting the mandatory minimum premium provision. (Dkt. 1, at 14–15.)

Under Illinois law, insurance brokers possess the duty "to exercise ordinary care and skill in renewing, procuring, binding, or placing coverage requested by the insured or proposed insured." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 318 (7th Cir. 2017) (citing 735 ILCS 5/2-2201). This duty arises after the proposed insured specifically requests coverage. *See Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021, ¶ 40, 28 N.E.3d 747, 757. As to plaintiffs' first allegation of negligence, Roemer argues that it did not fail to represent plaintiffs' unwillingness to agree to the mandatory minimum premium provision because a Hallmark agent was present at the September 2017 meeting, at which plaintiffs allege they voiced the restriction. Plaintiffs do not respond to this argument and therefore any response is waived. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument… results in waiver."). The latter three claims of negligence fall within the same bucket—that Roemer failed to provide

plaintiffs with critical information about the Renewal Policy, namely, the mandatory minimum premium provision.

Plaintiffs opted to bring this claim under a pure negligence theory as opposed to negligent misrepresentation[2]. The two torts are distinct and require different elements of proof. *See Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010) (Gettleman, J.).

To establish that Roemer acted negligently, plaintiffs must show "that the defendant owed a duty to the plaintiff[s], that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff[s'] injury." *Paper v. Braaten*, No. 18 C 1481, 2022 WL 888812, at *26 (N.D. Ill. Mar. 25, 2022) (Pallmeyer, J.). Roemer contends it owed plaintiffs no duty to specifically advise them of the mandatory minimum premium provision because plaintiffs did not make a specific request for a policy without such a provision. *See Skaperdas*, at 757. Roemer misapplies the principle in *Skaperdas*. The question here is one not answered explicitly in *Skaperdas*—whether Roemer possessed a duty to not mislead plaintiffs about the terms of the policy. The Court holds that it did. "As the Seventh Circuit has explained… section 2-2201 also includes the duty to provide accurate information to a party seeking coverage." *Pape*, 2022 WL 888812, at *27 (compiling cases). Therefore, Roemer possessed the duty not to provide false or misleading information while procuring the Renewal Policy for plaintiffs. *Id*; *see also Vertex Ref., NV, LLC v. Nat'l Union Fire Ins.*, No. 16 CV 3498, 2017 WL 977000, at *5 (N.D. Ill. Mar. 14, 2017) (Pallmeyer, J.) ("[A]n insurance producer which is cavalier about the accuracy of the information it provides to a party seeking coverage can hardly be said to have exercised ordinary care.").

---

[2] In response to defendants' motion for summary judgment on plaintiffs' claims of intentional misrepresentation, plaintiffs argue that they could establish the elements of a negligent misrepresentation claim if their intentional misrepresentation claim fails. Because plaintiffs opted for a pure negligence claim, they may not amend their complaint without leave of the Court at this stage in the litigation. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (quotation omitted) ("[A] plaintiff may not amend his complaint through his arguments in his brief in opposition to a motion for summary judgment.").

The question then remains whether Roemer breached that duty. Plaintiffs do not produce a fulsome response to Roemer's negligence arguments. Nevertheless, the Court will not dispose of the negligence claims. Plaintiffs contend that Roemer failed to properly notify them of the mandatory minimum premium until September 18, 2018, at which time Schwartz admitted that he knew plaintiffs were unaware of the mandatory minimum premium requirement. (Dkt. 106, ¶ 13.) Defendants maintain that Schwartz told plaintiffs about the mandatory minimum prior to the policy renewal. (Dkt. 99, Ex. 2, at 63:16–64:5.) Whether Roemer misled plaintiffs remains a genuine issue of material fact for a jury to decide.

Roemer argues that plaintiffs' negligence claim nonetheless fails because plaintiffs bear the responsibility to "know the import and meaning of the insurance contract." *Indus. Enclosure Corp. v. Glenview Ins. Agency, Inc.*, 379 Ill. App. 3d 434, 440, 884 N.E.2d 202, 207 (1st Dist. 2008). Had plaintiffs read the Renewal Policy, Roemer argues, they would have discovered the mandatory minimum premium amount. First, plaintiffs were unable to consult the policy at the time of the alleged misrepresentations because Roemer provided it three months after the Roemer Binder. (Dkt. 112, ¶ 5.) Without the opportunity to reference the policy's terms at the time of renewal, plaintiffs necessarily relied upon the Roemer Binder and defendants' statements.

The Roemer Binder similarly does not immunize Roemer from plaintiffs' negligence claims. Roemer admits that the Roemer Binder did not contain the words "mandatory minimum." (*Id.* ¶ 3.) Rather, it argues that its reference to the "estimated premium" and "adjustable at annual audit at policy expiration" clause put plaintiffs on notice of the mandatory minimum premium amount. True, an audited premium may signal that a mandatory minimum could exist. However, drawing inferences plaintiffs' favor, a reasonable juror could find that Roemer's statements and omissions created confusion about the existence of the mandatory premium provision. For instance, LeAnna Glick, a customer service representative for Roemer, testified that it would be fair for an insured to

6

assume that a policy does not contain a mandatory minimum premium exists if the binder does not make note of one. (Dkt. 99, Ex. 9, at 23:1–9.) In addition, though both policies contained a mandatory minimum premium, plaintiffs' monthly reporting form for the First Hallmark Policy indicated a monthly minimum premium amount whereas the Renewal Policy did not. (Dkt. 112, ¶ 7.) Taking the record as a whole and in the light most favorable to plaintiffs, a reasonable juror could conclude that the information provided by Roemer created confusion that misled plaintiffs. *See Pape*, 2022 WL 88812, at *31.

Finally, Roemer maintains that it cannot be liable for alleged misrepresentations that are merely ancillary to the sale of the insurance policy itself. *See Hoover v. Country Mut. Ins. Co.*, 2012 Ill App (1st) 110939, ¶ 47. Without further explanation, Roemer seems to be referring to an exception to the *Moorman* doctrine. *See generally Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982). Because plaintiffs pursue a pure negligence claim, the *Moorman* doctrine does not apply. *See Vertex Refining, NV, LLC*, 2017 WL 977000, at *4. Defendant's motion is denied.

Misrepresentation Claims (Counts V–VII)

Finally, Roemer and Schwartz move for summary judgment on plaintiffs' claims for intentional misrepresentation. Plaintiffs allege that defendants intentionally omitted the mandatory minimum premium provision from the Roemer Binder, which misled them to believe the Renewal Policy did not contain one. Roemer fails to raise any argument in support of its motion on the intentional misrepresentation claims against it. Therefore, its arguments are waived and summary judgment on Counts V and VI is denied. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Schwartz devotes one sentence in his motion as to the claims against him (Counts VII and VIII).

To sustain a claim for intentional misrepresentation, the plaintiff must establish: "(1) a false statement of material fact[,] (2) known or believed to be false by the person making it, (3) an intent to induce the plaintiff to act, (3) action by the plaintiff in justifiable reliance on the truth of the

7

statement, and (5) damage to the plaintiff resulting from such reliance." *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 30, 178 N.E.3d 1046, 1055–56.

Schwartz argues that plaintiffs' intentional misrepresentation claim fails because he did not make any false statement because he did not prepare or direct the preparation of the Roemer Binder. The Court agrees. Plaintiffs fail to produce any evidence that Schwartz participated in the creation of the Roemer Binder, let alone that he intentionally omitted material information from it. Glick testified in her deposition that the customer service representative on an account creates an insurance binder for the proposed policy, which is overseen by the insurance producer. (Dkt. 99, Ex. 9, at 13:10–24, 14:5–7). Though she testified that Schwartz served as an insurance producer between 2016 and 2017, she could not identify which customer service representative created the Roemer Binder or which producer oversaw its creation. (*Id.*, at 14:8–18.) Without any evidence linking Schwartz to the decision to include or omit information from the Roemer Binder, no reasonable juror could find him liable for intentional misrepresentation. *Blanton v. RoundPoint Mortgage Servicing Corp.*, 825 Fed. Appx. 369, 372 n.1 (7th Cir. 2020) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit."). Therefore, summary judgment is granted for Schwartz as to Counts VII and VIII.

**Conclusion**

For the foregoing reasons, the Court strikes defendants' first motion for summary judgment as moot [91]. The Court denies Roemer's amended motion for summary judgment [97] on Counts III–VI and grants the motion for Schwartz on Counts VII and VIII.

IT IS SO ORDERED.

Date: 9/16/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

8